1  **LENARD E. SCHWARTZER**
   2850 S Jones Blvd, Suite 1
2  Las Vegas, NV 89146-8308
   (702) 307-2022
3
   TRUSTEE
4

*E-Filed on*

*1-26-10*

5

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                          DISTRICT OF NEVADA

10  In re                                )   Case No. BK-S 08-25471 LBR
                                         )
11  MAMPRE MINCI,                        )   IN PROCEEDINGS UNDER CHAPTER 7
                                         )
12                                       )   TRUSTEE'S MOTION TO SELL
                                         )   PERSONAL PROPERTY
13                                       )
                          Debtors        )
14                                       )   Date:  March 17, 2010
                                         )   Time:  11:00 a.m.
15                                       )   Place: Foley Bldg., Third Floor
                                         )
16

17        The Trustee, LENARD E. SCHWARTZER, moves this Court for an order allowing him to sell

18  personal property of the estate as set forth below.

19        1. This case was commenced by the filing of a Chapter 7 Bankruptcy petition on

20  December 24, 2008.

21        2. Movant is the duly appointed and acting Chapter 7 Trustee.

22        3. An asset of the estate is the Debtors' 100% interest in DMG Trading, Inc., dba, Da Mincci

23  Jewelers ("DMG Trading"), which successfully reorganized under Chapter 11 of the United States

24  Bankruptcy Code, bearing case number 08-13145 BAM.

25        4. The Debtor scheduled the value of the stock as zero, but since the filing of the above-

26  entitled case, Debtor has successfully reorganized DMG Trading.

27        5. DMG Trading is a Nevada corporation formed in 2002. Its President and 100% Owner is

28  Mampre Minci ("Minci"), the Debtor in this case. DMG Trading is the owner of a jewelry store,

1  selling and servicing fine jewelry located at The District at Green Valley Ranch which was opened in

2  2003. This store is located at 2240 Village Walk Way, Suite 130, Henderson, Nevada.

3      6. DMG Trading filed a petition for relief under Chapter 11 of the Bankruptcy Code. It

4  negotiated a reorganization of its debts with its creditors and a Plan of Reorganization was

5  confirmed. A copy of the confirmation order is attached to this motion as Exhibit "A." Any party

6  who purchases Minci's interest in DMG Trading will take that interest subject to the terms of the

7  confirmation order. Among the terms are a lease for the jewelry store from The District at GVR,

8  LLC (the store's landlord), a secured loan from Community Bank (a lender), a payment plan for

9  Richemont North America (a supplier), and other creditors.

10     7. Debtor now offers to purchase the estate's interest in the stock back from the estate for the

11 sum of $5,000.00.

12     8. The Trustee feels it is in the best interest of the unsecured creditors to complete this sale,

13 close the case, and make any distributions. There will be no broker commission or closing costs. It

14 is in the best judgment of the Trustee that this sale will bring the highest return to the estate.

15     9. The Trustee will accept higher offers.

16                          POINTS AND AUTHORITIES

17 11 USC §363. Use, sale, or lease of property, provides in part:

18          (b)(1) The trustee, after notice and a hearing, may use, sell or lease, other than
            in the ordinary course of business, property of the estate.
19
20     11 USC § 541. Property of the estate, provides in part:

21          (a) The commencement of a case . . . creates an estate. Such estate is
            comprised of all the following property, wherever located and by whomever
            held:
22
23              (1) . . . all legal equitable interests of the debtor in property as of the
            commencement of the case.

24                                ANALYSIS

25     At the time of filing bankruptcy, the Debtor owned a 100% interest in DMG Trading. This

26 asset is property of the estate pursuant to 11 USC §541. Pursuant to 11 USC §363, the Trustee

27 desires to sell the estate's interest in DMG Trading back to the Debtor for the sum of $5,000.00.

28     The Trustee believes that there will be no other offers for this corporation as DMG Trading

                                      2

1    has only recently reorganized under Chapter 11 of the United States Bankruptcy Code. However,

2    notice has been sent to a substantial number of local jewelers to attempt to solicit other bids.

3 CONCLUSION

4       The Trustee prays for an order authorizing the sale of the estate's 100% interest in DMG

5    Trading, Inc., for the sum of $5,000.00, or any higher offer made at or before the hearing of this

6    motion.

7

8    Dated: January 13, 2010

           LENARD E. SCHWARTZER
           Trustee

1

2

3

**Entered on Docket**
**January 11, 2010**

4

*Bruce A. Markell*

Hon. Bruce A. Markell
**United States Bankruptcy Judge**

5

6

7    NANCY L. ALLF, ATTORNEY AT LAW
     Nancy L. Allf, Bar No. 0128
8    *Nancy.allf@gmail.com*
     415 S. Sixth Street, Ste. 200F
9    Las Vegas, NV 89101
     Telephone: (702) 671-0070
10   Facsimile: (702) 671-0165
     Attorneys for Debtor
11
                              UNITED STATES BANKRUPTCY
12                                 DISTRICT OF NEVADA

13   In re:                        )
                                    )   Case No. BK-S-08-13145-BAM
14   D.M.G. TRADING, INC. d/b/a     )   Chapter 11
     Da MINCCI JEWELERS,            )
15                                  )   Date: December 8, 2009
                Debtor.             )   Time: 10:00 a.m.
16                                  )

17   **ORDER CONFIRMING DEBTOR'S FINAL AMENDED CHAPTER 11 PLAN OF**
     **REORGANIZATION AS MODIFIED ON DECEMBER 3, 2009**
18

19        On December 8, 2009 ("Confirmation Hearing"), the Debtor's Final Amended Chapter 11

20   Plan of Reorganization [Docket 175], originally filed on June 5, 2009 [Docket 140], as Modified

21   on September 10, 2009 [Docket 155] and October 29, 2009 [Docket 165] (collectively the

22   "Plan")[1], filed by D.M.G. TRADING, INC. d/b/a DaMINCCI JEWELERS, Debtor and Debtor-

23   in-Possession ("Debtor"), came before the Court in this Chapter 11 case. The creditors and parties

24   in interest and the counsel who appeared at the Confirmation Hearing are identified in the record

25

26   _____

27   [1] A copy of the Modification to Debtor's Chapter 11 Plan of Reorganization, attaching the Debtor's Final Amended
     Chapter 11 Plan of Reorganization Plan is attached hereto as Exhibit "A" and incorporated herein by reference.

28

NANCY L. ALLF,
ATTORNEY AT LAW

*Exhibit A*

1    of the Confirmation Hearing.

2         The Court heard the arguments and representations of counsel regarding confirmation of

3    the Plan at the Confirmation Hearing, the Court has taken judicial notice of the papers and

4    pleadings on file in the Debtor's Chapter 11 case, and the Court has reviewed and considered the:

5    Approved Amended Disclosure Statement [Docket 137, 138], approved by order [Docket 147] on

6    July 20, 2009; Plan, as modified [Docket 140, 155, 165, 168, 173]; Ballot Summary [Docket Nos.

7    160 and 172]; Brief in Support of Confirmation [Docket 160]; and Affidavit of Mampre Minci in

8    Support of Confirmation of Plan [Docket 162].

9         No parties filed an objection to confirmation or voiced any objection.

10        On December 8, 2009, the Court announced its findings of fact and conclusions of law on

11   the record, which statements on the record shall constitute the Court's findings of facts and

12   conclusions of law under Fed.R.Civ.P. 52 as made applicable by Fed.R.Bankr. 7052 and 9014.

13   Any finding of fact shall constitute a finding of fact, even if it is stated as a conclusion of law.

14   Any conclusion of law shall constitute a conclusion of law, even if it is stated as a finding of fact.

15   **IT IS HEREBY ORDERED AS FOLLOWS:**

16        1.    Proper, timely, adequate, and sufficient notice of the Debtor's Final Amended

17   Chapter 11 Plan of Reorganization ("Plan") and Approved First Amended Disclosure Statement,

18   the relief requested and the deadlines for voting thereon and objecting thereto, was provided, was

19   reasonable and appropriate under the circumstances and comports with the requirements of due

20   process, applicable Bankruptcy Rules and the rules of this Court, such that no other or further

21   notice was required.  A copy of the Final Amended Plan is attached hereto as **Exhibit A.**

22        2.    The Plan Modification does not affect the rights of creditors and re-balloting is not

23   required.

NANCY L. ALLF,
ATTORNEY AT LAW

3.      All informal Objections to the Plan raised by interested parties have been resolved. All creditors and interested parties were sent a copy of the Modification's to Debtor's Chapter 11 Plan of Reorganization.

4.      To the fullest extent permitted by 11 U.S.C. §1141 and based upon the facts and circumstances of this case, the provisions of the Plan and this Order shall bind the Debtor and all Creditors of the Debtor, whether or not the Claims of such Creditors are impaired under the Plan, whether or not such Creditors have filed proofs of claim or are deemed to have filed proofs of claim in this Case.

5.      The Debtor is authorized to take all actions necessary to implement the Plan and the transactions contemplated therein in accordance with the terms of the Plan. The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, notes, releases, deeds and other agreements or documents and to take such actions as may be necessary and appropriate to effectuate and further evidence the terms and conditions of the Plan.

6.      From and after the Effective Date, and except as provided in the Plan, all persons or entities that have held, currently hold or may hold a Claim are permanently enjoined from taking any of the following actions on account of any such Claim: (i) commencing or continuing in any manner any action or other proceeding against the Debtor; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against Debtor, or its property; (iii) creating, perfecting, or enforcing any Lien or encumbrance against Debtor, or its property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or objections due to Debtor, or its property; and (v) commencing or continuing any action, in any manner, in any place against the Debtor, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code. By accepting Distributions

NANCY L. ALLF,
ATTORNEY AT LAW

1   pursuant to the Plan, except as provided for in the Plan, each holder of an Allowed Claim will be

2   deemed to have specifically consented to the injunction established herein.  Nothing in this Order

3   or the Plan shall affect, release, enjoin or impact in any way the prosecution of the Claims of

4   Creditors in accordance with the terms of the Plan, and, without limiting any other rights provided

5   in the Plan, the Bankruptcy Code or otherwise, the injunction shall not affect or apply to a Claim

6   of any party that has been or is found to be non-dischargeable under Section 523(a), or the

7   Debtor's right to pursue objections to Claims.

8

9        7.      From and after the Effective Date, the Debtor has not and shall not incur any

10  liability to any holder of a Claim of any other party in interest, or any of their respective members

11  or former members, agents, employees, representatives, financial advisors, attorneys, consultants,

12  or affiliates, or any of their successors or assigns, for any act or omission in connection with,

13  relating to, or arising out of, the Case, preparation for the Case, any settlement related to the Case,

14  the negotiation and execution of the Plan, the negotiation and pursuit of Confirmation of the Plan,

15  the consummation of the Plan, or the administration of the Plan, except for its acts or omissions

16  constituting wilful misconduct or gross negligence, as finally determined by a court of competent

17  jurisdiction and in all respects the Debtor is entitled to reasonably rely upon the advice of counsel

18  with respect to its duties and responsibilities under the Plan or in the context of the Case.  No

19  holder of a Claim, or any other party in interest, including their respective agents, employees,

20  representatives, financial advisors, attorneys or affiliates, has any right of action against the

21  Debtor for any act or omission in connection with, relating to, or arising out of, the Case, the

22  negotiation and pursuit of Confirmation of the Plan, the consummation of the Plan, or the

23  administration of the Plan, except for their acts or omissions constituting wilful misconduct or

24  gross negligence as finally determined by a court of competent jurisdiction.

25

26

27

28

NANCY L. ALLF,
ATTORNEY AT LAW

Case 08-13145-bam    Doc 179    Entered 01/11/10 06:51:32    Page 5 of 32

8.    The Debtor is obligated to pay U.S. Trustee quarterly fees based upon all disbursements of the Debtor in accordance with the sliding scale set forth at 28 U.S.C. §1930(a)(6), only until the Effective Date. U.S. Trustee fees accrued prior to the confirmation of a plan of reorganization shall be paid by the Debtor on or before the Effective Date of the Plan pursuant to 11 U.S.C. §1129(a)(12).

9.    The Debtor shall file post-confirmation reports as required by Local Rule 3020 and in quarterly post-confirmation operating reports required by paragraph 7.2 of the U.S. Trustee Guidelines.

10.    The Court shall retain jurisdiction as provided by the Plan and under applicable law.

11.    If and to the extent that there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control. The failure to reference any particular provision of the Plan in this Order shall have no effect on the binding effect, enforceability, or legality of such provisions, and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan.

12.    The Effective Date of the Plan will be February 1, 2010.

IT IS SO ORDERED.

Submitted by:

NANCY L. ALLF, ATTORNEY AT LAW

By: _____
Nancy L. Allf, Esq.
415 S. Sixth Street, Ste. 200F
Las Vegas, NV 89101
Attorneys for Debtor

NANCY L. ALLF,
ATTORNEY AT LAW

1   Approved/Disapproved by:

2   SYLVESTER & POLEDNAK

3   By: _____

4   James B. MacRobbie, Esq.
    7371 Prairie Falcon #120
5   Las Vegas, NV 89128
    Attorney for Community Bank of Nevada

6

7   Approved/Disapproved by:

8   SHEA & CARLYON

9   By: _____

10  Shawn Miller, Esq.
    701 Bridger, #850
11  Las Vegas, NV 89101
    Attorney for Richemont North America, Inc.

12

13  Approved/Disapproved by:

14  JOLLEY URGA WIRTH WOODBURY & STANDISH

15  By: _____

16  Anna Jane I. Zarndt, Esq.
    3800 Howard Hughes Pkwy., 16th Floor
17  Las Vegas, NV 89169
    Attorney for Signal Butte

18

19

20

21

22

23

24

25

26

27

28

NANCY L. ALLF,
ATTORNEY AT LAW

1

2

## CERTIFICATION

3

4    In accordance with LR 9021, counsel submitting this document certifies as
     follows (check one):
5
     ___ The court has waived the requirement of approval under LR 9021.
6
     ___ No parties appeared or filed written objections, and there is no trustee
7    appointed in the case.

8    _x__ I have delivered a copy of this proposed order to all counsel who appeared at the hearing,
     any unrepresented parties who appeared at the hearing, and any trustee appointed in this case, and
9    each has approved or disapproved the order, or failed to respond, as indicated below [list each
     party and whether the party has approved, disapproved, or failed to respond to the document]:
10

11   James B. MacRobbie, Esq. – approved

12   Shawn Miller, Esq. – failed to respond

13   Anna Jane I. Zarndt, Esq. – failed to respond

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NANCY L. ALLF,
ATTORNEY AT LAW                                    Page 7 of 7

# EXHIBIT  A

1  NANCY L. ALLF, ATTORNEY AT LAW
   Nancy L. Allf, Bar No. 0128
2  *Nancy.allf@gmail.com*
   415 S. Sixth Street, Ste. 200F
3  Las Vegas, NV 89101
   Telephone: (702) 671-0070
4  Facsimile: (702) 671-0165
   Attorneys for Debtor
5
                        UNITED STATES BANKRUPTCY
6                           DISTRICT OF NEVADA

7  In re:                          )
                                   )    Case No. BK-S-08-13145-BAM
   D.M.G. TRADING, INC. d/b/a      )    Chapter 11
8  Da MINCCI JEWELERS,             )
                                   )    Date: December 8, 2009
9               Debtor.            )    Time: 10:00 a.m.
                                   )
10 ─────────────────────────────── )

11    **MODIFICATIONS TO THE DEBTOR'S AMENDED CHAPTER 11 PLAN FILED ON
                              OCTOBER 29, 2009**

12        COMES NOW THE DEBTOR, by and through its counsel Nancy L. Allf, and pursuant to

13 11 USC 1127, files this Modification to the Debtor's Amended Chapter 11 Plan of

14
   Reorganization filed on October 29, 2009 a Docket #165. The Modified Plan shall be filed as the
15
   Debtor's Amended Chapter 11 Plan of Reorganization as Modified on December 2, 2009.
16

17                              **Points and Authorities**

18        The Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on April

19 3, 2008. Thereafter, it filed a Plan of Reorganization and Disclosure Statement on June 5, 2009.

20 The Disclosure Statement was approved by Order entered on June 20, 2009. The Debtor filed an

21 Amended Chapter 11 Plan of Reorganization (Amended Plan) on October 29, 2009.   This

22 document modifies the Amended Plan.
23
          The following provisions of the Amended Plan are as follows:
24
25        1.    Treatment of Class 4 Claims:  On page 9, line 27 and page 10, lines 1-16, the

26 Amended Plan currently reads:

27

28

NANCY L. ALLF,
ATTORNEY AT LAW

Case 08-25471-lbr    Doc 32    Entered 01/26/10 14:45:21    Page 13 of 35

Case 08-13145-bam    Doc 179    Entered 01/11/10 06:51:32    Page 10 of 32
Case 08-13145-bam    Doc 173    Entered 12/07/09 15:49:28    Page 2 of 5

Treatment of Class 4 Claim.  Debtor stipulated to a judgment in favor of Richemont in the amount of $772,897.84 (consisting of $686,850.59 in principal and $86,047.25 in pre-petition interest).  Richemont will retain a valid lien as to Wells Fargo Attached Funds which total approximately $11,589.32 that is currently in the possession of the Clark County Sheriff and a valid second lien (after Community Bank's Lien) in attached Inventory consisting of products supplied and delivered by Richemont.  (The Attached Inventory will be second in priority to Community Bank's security interest.)  However, there is no value in the second priority lien as to the Inventory.

The segregated funds due to an Adequate Protection Order in the amount of approximately $30,000 will be distributed with approximately ½ of the funds to be used to pay Debtor's counsel's approved attorney's fees and the other ½ of the funds to go to Community Bank.

The principal of $772,897.84 minus funds from the Wells Fargo Attached funds which equals approximately $761,308.52 will be paid as a Class 5 claim.. Richemont will support the Debtor's Plan.

On page 10, lines 3-21, the Modifications as proposed herein shall change that language as follows:

Treatment of Class 4 Claim.  This class originally consisted of Richemont North America, Inc. (Richemont) which claimed to be a secured creditor, and who had filed an adversary proceeding to determine its status.  Because the debt was disputed, Richemont was separately classified.  After the Plan was filed, the Debtor and Richemont settled the issues involved in the adversary proceeding, including the amount and treatment of the claim.  A joint motion to approve a settlement between the parties was filed on April 17, 2009 and approved by order entered on June 15, 2009.

Because of the resolution of Richemont's claim, a valid judgment lien attached to certain funds attached in a Wells Fargo account in the amount of $11,589.32. That is the amount of Richemont's secured claim in this case.  The attached Wells Fargo funds, currently in the possession of the Clark County Civil Sheriff's department, shall be delivered to Richemont 11 calendar days following Confirmation."

The balance of the claim, in the amount of $761,308.52, will be treated in Class 5 as an unsecured claim.

2.    Classification of Claims and Interests.    On page 8, lines 6 through 10, the Amended Plan currently reads as follows:

NANCY L. ALLF,
ATTORNEY AT LAW

Case 08-25471-lbr    Doc 32    Entered 01/26/10 14:45:21    Page 14 of 35

Case 08-13145-bam    Doc 179    Entered 01/11/10 06:51:32    Page 11 of 32
Case 08-13145-bam    Doc 173    Entered 12/07/09 15:49:28    Page 3 of 5

1

2

           Class 6: Insiders. This class consists of Mampre Minci. Minci filed a voluntary petition under Chapter 7 on December 24, 2008. Lenard Schwarter is the Trustee in that case.

3

4

           Class 7: Equity Security Holders. This class consists of Mampre Minci, the owner of all equity in the Debtor entity. The Chapter 7 estate now owns the stock in the Debtor Company.

5

6

      On page 8, lines 6 through 10, the Modifications as proposed herein shall change that

7

language as follows:

8

9

           Class 6: Insiders. This class consists of the Chapter 7 bankruptcy estate of Mampre Minci. Minci filed a voluntary petition under Chapter 7 on December 24, 2008. Lenard Schwarter is the Trustee in that case.

10

11

12

           Class 7: Equity Security Holders. This class consists of the Chapter 7 bankruptcy estate of Mampre Minci, the owner of all equity in the Debtor entity. The Chapter 7 estate now owns the stock in the Debtor Company.

13

14

      3.    Treatment of Class 1 Claim. On page 8, lines 15-19, the Amended Plan currently

15

reads as follows:

16

      Treatment of Class 1 Claim. Signal Butte is a creditor in this class and will be paid the full amount based on an allowed administrative claim in the amount of $20,000. It will receive the security deposit on the Lease Agreement that is currently located in Debtor's Community Bank of Nevada Account No. 10404663, which is believed to be in the amount of $10,615.64. The remainder will be paid ($20,000 – the funds in the Bank of Nevada Account No. 10404663) as an allowed administrative claim, and at the rate of $500.00 monthly, along with unclassified claims

17

18

19

20

      On page 8, lines 17-26, the Modifications as proposed herein shall change that language

21

as follows:

22

      Treatment of Class 1 Claim. Signal Butte is a creditor in this class and will be paid the full amount based on an allowed administrative claim in the amount of $20,000. It will receive the security deposit on the Lease Agreement that was identified as a Letter of Credit on deposit at Community Bank of Nevada Account No. 10404663, which is believed to be in the amount of $10,615.64. The FDIC was appointed as Receiver for Community Bank of Nevada on August 14, 2009. The right to obtain the Letter of Credit shall be assigned to Signal Butte. The remainder will be paid ($20,000 – the funds in the Bank of Nevada Account No. 10404663) as an allowed administrative claim, and at the rate of $500.00 monthly, along with unclassified claims.

23

24

25

26

27

28

Case 08-25471-lbr    Doc 32    Entered 01/26/10 14:45:21    Page 15 of 35

Case 08-13145-bam    Doc 179    Entered 01/11/10 06:51:32    Page 12 of 32
Case 08-13145-bam    Doc 173    Entered 12/07/09 15:49:28    Page 4 of 5

1

2          4.      Treatment of Class 3 Claim.  On page 8, lines 26-27, the Amended Plan currently

3    reads as follows:

4          Treatment of Class 3 Claim.   Community Bank of Nevada is the only secured
5          claimant.  It has agreed to extend its loan for five years up to and until May 11,
           2012.
6

7          On page 9, lines 2-3, the Modifications as proposed herein shall change that language as

8    follows:

9          Treatment of Class 3 Claim.  Community Bank of Nevada is the only secured
           claimant.  It has agreed to extend its loan for four years up to and until May 11,
10         2012.  As a Class 4 claim, Community Bank of Nevada is entitled to one-half of
           the segregated funds due to an Adequate Protection Order in the amount of
11         approximately $30,000 with the balance to be paid to Gonzalez Saggio & Harlan
12         LLP for approved but unpaid legal fees.

13         5.      Treatment of Class 6 and Class 7 Claims.    On page 11, lines 1-5, the Amended

14   Plan currently reads as follows:

15         Treatment of Class 6 Claims.  Mampre Minci will receive nothing on account of
16         his pre-petition debt owed by the company.

17         Treatment of Class 7 Claims.   Mampre Minci shall retain his interest in the
           company, on behalf of his Chapter 7 estate.
18

19         On page 11, lines 4-8, the Modifications as proposed herein shall change that language as

20   follows:

21         Treatment of Class 6 Claims.  The Chapter 7 bankruptcy estate of Mampre Minci
           will receive nothing on account of its pre-petition debt owed by the company.
22   / / /

23   / / /

24   / / /
25
     / / /
26

27

28

NANCY L. ALLF,
ATTORNEY AT LAW

Case 08-25471-lbr    Doc 32    Entered 01/26/10 14:45:21    Page 16 of 35

Case 08-13145-bam    Doc 179    Entered 01/11/10 06:51:32    Page 13 of 32
Case 08-13145-bam    Doc 173    Entered 12/07/09 15:49:28    Page 5 of 5

1    <u>Treatment of Class 7 Claims</u>. The Chapter 7 bankruptcy estate of Mampre Minci
      shall retain its interest in the company, on behalf of his Chapter 7 estate.

2

3    Dated: December ⎯⎯ , 2009                    NANCY L. ALLF, ATTORNEY AT LAW

4                                         By: _Nancia L Allf_____

5                                              Nancy L. Allf, Bar No. 0128
                                               nancy_allf@gshllp.com
6                                              415 S. Sixth Street, Ste. 200F
                                               Las Vegas, NV 89101
7                                              Attorneys for Debtor

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NANCY L. ALLF, ATTORNEY AT LAW
Nancy L. Allf, Bar No. 0128
*Nancy.allf@gmail.com*
415 S. Sixth Street, Ste. 200F
Las Vegas, NV 89101
Telephone: (702) 671-0070
Facsimile: (702) 671-0165
Attorneys for Debtor

E-FILED
12-18-09

UNITED STATES BANKRUPTCY
DISTRICT OF NEVADA

In re:                                    )
                                          )    Case No. BK-S-08-13145-BAM
D.M.G. TRADING, INC. d/b/a                )    Chapter 11
Da MINCCI JEWELERS,                       )
                                          )    Date: December 8, 2009
                    Debtor.               )    Time: 10:00 a.m.
                                          )

## DEBTOR'S FINAL AMENDED CHAPTER 11 PLAN OF REORGANIZATION AS MODIFIED ON DECEMBER 3, 2009

### ARTICLE I

### INTRODUCTION

The Debtor and Debtor-In-Possession, D.M.G. Trading, Inc. d/b/a Da Mincci Jewelers, a Nevada corporation ("Debtor"), by and through its counsel, Nancy L. Allf of Gonzalez Saggio & Harlan, LLP, hereby propose this Final Amended Chapter 11 Plan of Reorganization (the "Plan"). Reference is made to the Debtor's Disclosure Statement in connection with the Debtor's Chapter 11 Plan of Reorganization (the "Disclosure Statement") for a discussion of the Debtor's history, business, property and financial information and for a summary of the Plan and related matters.

All holders of claims are encouraged to read this Plan in its entirety before voting to accept or reject this Plan. No materials, including the Disclosure Statement and the Exhibits and Schedules attached thereto and referenced therein, have yet been approved by the United States Bankruptcy Court for the District of Nevada for use in soliciting acceptances or rejections of this Plan.

NANCY L. ALLF,
ATTORNEY AT
LAW

**ARTICLE II**

**DEFINITIONS**

The definitions contained in the Bankruptcy Code are incorporated herein. Whether or not inconsistent with the definitions contained in the Bankruptcy Code, the following terms used herein shall have the following meanings:

2.1    Administrative Claim: A Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses awarded or owed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

2.2    Allowed Claim:    A Claim against the Debtor to the extent that the Claim was scheduled in the list of creditors prepared and filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent or unliquidated as to amount; or a proof of claim was timely filed as to which no objections are pending or such objections have been overruled.

2.3    Allowed Priority Claim:    An Allowed Claim entitled to priority pursuant to Sections 507(a)(3), (4) or (6) of the Bankruptcy Code.

2.4    Allowed Secured Claim:    An Allowed Claim secured by a lien, security interest or other charge against the property in which the estate has an interest, or which is subject to set-off under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such secured Claim in the estate's interest in such property, or to the extent of the amount subject to any set-off, as the case may be. An allowed Secured Claim may include post-petition interest if permitted under Section 506(b) of the Code.

NANCY L. ALLF,
ATTORNEY AT
LAW

1    2.5    Allowed Tax Claim:  An Allowed Unsecured Claim that is entitled to priority
2    pursuant to Section 507(a)(8) of the Code.

3    2.6    Approval Date:    The date on which an order approving the Disclosure
4    Statement, or an amended version thereof, is entered by the Clerk of the Bankruptcy Court on the
5    Court's docket.

6    2.7    Avoidance Action:    Any adversary proceeding brought to seek the recovery of
7    money or property on account of transactions avoidable under Sections 544, 547, 548, 549 or 550
8    of the Bankruptcy Code.

9    2.8    Bankruptcy Code or Code:    Title 11 of The United States Code, as now in effect
10    or hereafter amended.  All citations in the Plan or Disclosure Statement to section numbers are to
11    the Code unless otherwise expressly indicated.

12    2.9    Bankruptcy Court or Court:  The United States Bankruptcy Court for the District
13    of Nevada, or such successor court or tribunal as may hereafter be confirmed or created by lawful
14    authority with power to confirm reorganization plans under Chapter 11, Title 11 of the United
15    States Code, and all other applicable statutes, rules and regulations.

16    2.10    Bankruptcy Rule or Rules:    The Federal Rules of Bankruptcy Procedure and the
17    Local Bankruptcy Rules for the District of Nevada, as now in effect or hereafter amended.

18    2.11    Bar Date:    The last date for filing proofs of claims with the Bankruptcy Court
19    was August 6, 2008.

20    2.12    Business Day: Any day, other than a Saturday, Sunday or legal holiday as defined
21    in Bankruptcy Rule 9006(a).

22    2.13    Case:  The within Chapter 11 proceeding, known as In re D.M.G. Trading, Inc.
23    d/b/a Da Mincci Jewelers, case number BK-S-08-13145-BAM, pending before the United States
24    Bankruptcy Court for the District of Nevada.

25    2.14    Claim: Any right to payment, whether or not such right is reduced to judgment,
26    liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
27
28

NANCY L. ALLF,
ATTORNEY AT
LAW

1   equitable, secured or unsecured; or, a right to an equitable remedy for breach of performance if

2   such breach gives rise to a right to payment, whether or not such right is an equitable remedy or is

3   reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

4   undisputed, secured or unsecured.

5        2.15   Claimants or Creditors:        Persons or entities holding Allowed Claims.

6        2.16   Class: A category of holders of Claims which are substantially similar to other

7   Claims and into which Allowed Claims and Allowed Secured Claims are grouped and classified

8   pursuant to the Plan.

9        2.17   Confirmation: The entry of the Confirmation Order on the docket of the

10  Bankruptcy Court.

11       2.18   Confirmation Order: The order entered by the Clerk of the Bankruptcy Court

12  confirming the Plan.

13       2.19   Creditor:        Any person or entity holding an Allowed Claim or Claims against

14  the Debtor.

15       2.20   Debtor:        D.M.G. Trading, Inc. d/b/a Da Mincci Jewelers, a Nevada

16  corporation.

17       2.21   Disclosure Statement: The Disclosure Statement accompanying the Debtors'

18  Chapter 11 Plan of Reorganization prepared by the Debtors as required by Section 1125 of the

19  Bankruptcy Code.

20       2.22   Disputed Claim:        A Claim as to which an objection has been timely Filed, and

21  which objection, if timely Filed, has not been withdrawn on or before any date fixed for filing

22  such objections by the Plan or by Order of the Bankruptcy Court and has not been overruled or

23  denied by a Final Order. Prior to the time that an objection to a Claim has been or may be timely

24  Filed, for the purposes of the Plan a Claim shall be considered a Disputed Claim in its entirety if

25  (a) the amount of the Claim specified in the proof of claim exceeds the amount of any

26  corresponding Claim scheduled by the Debtors in its Schedules of Assets and Liabilities; (b) any

27

28

NANCY L. ALLF,
ATTORNEY AT
LAW

1  corresponding Claim scheduled by the Debtors in its Schedules of Assets and Liabilities has been

2  scheduled as disputed, contingent, or unliquidated, irrespective of the amount scheduled; or (c) no

3  corresponding Claim has been scheduled by the Debtors in its Schedules of Assets and Liabilities.

4      2.23   Effective Date:    The Effective Date of the Plan shall be a date to be chosen

5  by the debtor, not earlier than the first day of the first month at least ten calendar days after the

6  Confirmation Date, and not more than 90 days after the Confirmation Date unless said date falls

7  upon a Saturday, Sunday or holiday, in which case the Effective Date shall be the next business

8  day. The Effective Date will be contained in the Confirmation Order.

9      2.24   Estate: The estate created in this Chapter 11 Case under Section 541 of the

10  Bankruptcy Code.

11      2.25   Filed or on File:    A pleading filed with the Clerk of the Bankruptcy Court,

12  District of Nevada, in this Chapter 11 Case.

13      2.26   Final Order:   An order or judgment of the Bankruptcy Court, or other court of

14  competent jurisdiction, as entered on the docket in the Case, which has not been reversed, stayed,

15  modified or amended, and as to which (a) the time to appeal or seek certiorari has expired and no

16  appeal or petition for certiorari has been timely filed, or (b) any appeal that has been or may be

17  taken or any petition for certiorari that has been or may be filed has been resolved by the highest

18  court to which the order or judgment was appealed or from this certiorari was sought.

19      2.27   Officers/Director of Debtor:  Mampre Minci is the sole officer and director of

20  D.M.G. Trading, Inc. d/b/a Da Mincci Jewelers, a Nevada corporation.

21      2.28   Order: An order or judgment of the Bankruptcy Court as entered by the Clerk of

22  the Court on the docket in thus Case.

23      2.29   Person:    Any natural person, corporation, general partnership, limited

24  partnership, limited liability company, association, joint stock company, joint venture, estate,

25  trust, government or any political subdivision thereof, governmental unit (as defined in the

NANCY L. ALLF,
ATTORNEY AT
LAW

1    Bankruptcy Code), official committee appointed by the United States Trustee, or other legal
2    entity.

3        2.30    Petition Date: April 3, 2008.

4        2.31    Plan:   The Chapter 11 Plan of Reorganization proposed by the Debtor in this
5    Case, and all exhibits, schedules, releases, and other attachment annexed thereto, as the same may
6    be amended, modified or supplemented from time to time in accordance with the Code.

7        2.32    Plan Proponent:    The Debtor.

8        2.33    Priority Tax Claim:  An   Allowed   Claim   entitled   to   priority   under
9    Section 507(a)(7) of the Bankruptcy Code.

10        2.34    Scheduled:    Set forth on the Schedules of Asset and Liabilities on file with the
11    Clerk of the Bankruptcy Court, including any filed Amendments to the Debtors' bankruptcy
12    petitions.

13        2.35    Schedules of Assets and Liabilities:  The Schedules of Assets and Liabilities filed
14    with the Bankruptcy Court, as the same have been or may be amended from time to time prior to
15    the Effective Date of the Plan.

16        2.36    Secured Claim:    Any Claim that is secured by a lien on property in which the
17    Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code.

18        2.37    Secured Creditor:    The holder of an Allowed Secured Claim in this Case.

19        2.38    Unclassified Claims: The Allowed Amount of all Claims entitled to priority
20    pursuant to Section 507(a)(1), (2), and (8) of the Bankruptcy Code.

21        2.39    Unsecured Claims:    The Allowed Amounts of those Claims against the Debtors
22    for which there are no assets of the Debtors serving as security, but not including any priority
23    Claims.

24        2.40    Unsecured Creditors: Creditors holding Allowed, Unsecured Claims against the
25    Debtors for which there are no assets of the Debtors serving as security, but not including
26    Unclassified Claims or Administrative Claims.

27

28

NANCY L. ALLF,
ATTORNEY AT
LAW

**ARTICLE III**

**TREATMENT OF UNCLASSIFIED CLAIMS**

Treatment of Unclassified Claims.   Regular expenses of Debtor's operations which constitute Administrative Expense claims shall be paid by the Debtor when due or upon allowance.  To the best of the Debtor's knowledge, unclassified claims are anticipated to consist of the U.S. Trustee's fees pursuant to the schedule set forth in Bankruptcy Code § 326(a); fees of Debtor's counsel, any fees of tax or accounting professionals engaged by the Debtor, and payment of post petition taxes.  This claim includes post-petition accrued property taxes.  Currently, Debtor owes allowed legal fees in the amount of $14,468.56.  Debtor has regularly paid the quarterly U.S. Trustee's Fees and filed Monthly Operating Reports.

**ARTICLE IV**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

For purposes of satisfying Debtors' obligations created under the Plan, the Claims of the Creditors and Interest Holders of the Debtors have been classified as follows:

Unclassified Claims:   To the best of the Debtor's knowledge, unclassified claims are anticipated to consist of the U.S. Trustee's fees pursuant to the schedule set forth in Bankruptcy Code § 326(a); fees of Debtor's counsel, any fees of tax or accounting professionals engaged by the Debtor, and payment of post petition taxes.  This claim includes post-petition accrued property taxes.

Class 1:  Administrative Claim-Signal Butte.  This creditor filed a proof of claim in the amount of $44,805.85, which Debtor disputed.  As a result of negotiations, this creditor has an allowed claim in the amount of $20,000.00 less the funds of Bank of Nevada Account No. 10404663, which is believed to be in the amount of $10,615.64.

Class 2:  Administrative Claim-First Equity Card Corporation.  This creditor filed a proof of claim, asserting $11,745.07 as an administrative claim.

Class 3:  Secured Creditor-Community Bank of Nevada.  This creditor filed a proof of claim in the amount of $250,101.54, but has agreed to a reduction in its claim for a loan modification.  This

creditor has an allowed claim in the amount of $200,000.00.

Class 4: Secured Creditor-Richemont. This creditor filed a proof of claim in the amount of $784,414.32 and filed an adversary Complaint in this case. This creditor has an allowed claim in the amount of $772,897.84, which is being reorganized.

Class 5: General Unsecured Claims. All other creditors shall be treated as General Unsecured Creditors.

Class 6: Insiders. This class consists of the Chapter 7 bankruptcy estate of Mampre Minci. Minci filed a voluntary petition under Chapter 7 on December 24, 2008. Lenard Schwarter is the Trustee in that case.

Class 7: Equity Security Holders. This class consists of the Chapter 7 bankruptcy estate of Mampre Minci, the owner of all equity in the Debtor entity. The Chapter 7 estate now owns the stock in the Debtor Company.

## ARTICLE V

### UNIMPAIRED/IMPAIRED CLAIMS

All Classes, except Class 7 are impaired under the Plan.

## ARTICLE VI

### TREATMENT OF CLASSES

Treatment of Class 1 Claim. Signal Butte is a creditor in this class and will be paid the full amount based on an allowed administrative claim in the amount of $20,000. It will receive the security deposit on the Lease Agreement that is currently located in Debtor's Community Bank of Nevada Account No. 10404663, which is believed to be in the amount of $10,615.64. The remainder will be paid ($20,000 – the funds in the Bank of Nevada Account No. 10404663) as an allowed administrative claim, and at the rate of $500.00 monthly, along with unclassified claims.

Treatment of Class 2 Claim. First Equity Card Corporation shall be paid $500 per month until its administrative claim in the amount of $11,745.07 is paid.

NANCY L. ALLF, ATTORNEY AT LAW

1        Treatment of Class 3 Claim.    Community Bank of Nevada is the only secured claimant.

2    It has agreed to extend its loan for four years up to and until May 11, 2012.  Beginning May 1,

3    2009, Community Bank will receive payments of principal and interest in the amount of $2,500

4    per month through October 1, 2009.  The first and second payments have been made.  From

5

6    November 1, 2009 through April 1, 2010, Community Bank will receive payments of $3,500 per

7    month.  From May 1, 2010 through April 1, 2012, Community Bank will receive payments of

8    $4,500 per month.  On January 1, 2010, January 1, 2011 and January 1, 2012, Community Bank

9    will receive an additional $20,000 for each month.  The remaining balance of the Loan will be

10   due May 11, 2012.  Commencing May 1, 2009, the interest rate will be the prime rate as of the

11   first of each month, reported in the Wall Street Journal up to a maximum annual rate of 5%.

12

13       Upon approval of the parties' cash collateral stipulation which will be drafted by

14   Community Bank, the Debtor will pay Community Bank one half of the cash proceeds from the

15   sale of Richemont/Cartier items currently in its possession, which are valued at approximately

16   $30,000.  The other half will be paid to Debtor's Counsel for allowed fees and costs.

17       Debtor will also provide Community Bank with monthly collateral inventories, and allow

18   Debtor to make physical inspection of inventory upon one business day's notice.  Also, Debtor

19   will insure all of Community Bank's collateral at full replacement value.  The Bank will retain its

20

21   security interest in un-encumbered, owned inventory.

22       In the event of a default, Debtor will have five days written notice to cure and Community

23   Bank may charge $500.00 for preparation of such Notice.  If the default is not cured within five

24   days, Community Bank may seek relief from the automatic stay on the sole issue of whether a

25   default occurred.

26       The Loan balance shall be reduced to $200,000.00 but shall revert to the full payoff

27

28

NANCY L. ALLF,
ATTORNEY AT
LAW

1    amount of $274,293.94 in the event of a default in the terms of the modified loan agreement.

2         <u>Treatment of Class 4 Claim.</u>  This class originally consisted of Richemont North America,

3    Inc. (Richemont) which claimed to be a secured creditor, and who had filed an adversary

4    proceeding to determine its status.  Because the debt was disputed, Richemont was separately

5    classified.  After the Plan was filed, the Debtor and Richemont settled the issues involved in the

6    adversary proceeding, including the amount and treatment of the claim.  A joint motion to

7    approve a settlement between the parties was filed on April 17, 2009 and approved by order

8    entered on June 15, 2009.

9    

10        Because of the resolution of Richemont's claim, a valid judgment lien attached to certain

11   funds attached in a Wells Fargo account in the amount of $11,589.32.  That is the amount of

12   Richemont's secured claim in this case.  The attached Wells Fargo funds, currently in the

13   possession of the Clark County Civil Sheriff's department, shall be delivered to Richemont 11

14   calendar days following Confirmation."

15   

16        The balance of the claim, in the amount of $761,308.52, will be treated in Class 5 as an

17   unsecured claim.

18        <u>Treatment of Class 5 Claim.</u>  Only creditors who filed timely proofs of claim will be

19   entitled to a distribution under the Plan of reorganization.  Creditors who timely filed proofs of

20   claim will be paid after Class 1, Class 2,  Class 3 and Class 4.  Class 5 includes Richemont's

21   deficiency claim of $761,308.52.   Claimants will receive pro rata, quarterly distributions from

22   Debtor's payment of $60,000 over 60 months, payable by Debtor from net operating income.

23   

24        Debtor will not be subject to any pre-payment penalties or requirements to fund the

25   unsecured creditors monthly, so long as a total of $60,000 is paid to them over time.  Further,

26   Debtor shall be discharged of all unsecured debt listed in its schedules where the claimants filed

27   

28   

NANCY L. ALLF,
ATTORNEY AT
LAW

1    untimely proofs of claim or failed to file any proof of claim.

2         Treatment of Class 6 Claims.  The Chapter 7 bankruptcy estate of Mampre Minci will

3    receive nothing on account of its pre-petition debt owed by the company.

4         Treatment of Class 7 Claims.  The Chapter 7 bankruptcy estate of Mampre Minci shall

5    retain its interest in the company, on behalf of his Chapter 7 estate.

6

7

8                        **MEANS FOR EXECUTION OF PLAN**

9

10   **A.    Description of the Plan.**

11        The Debtor has successfully negotiated a loan modification with Community Bank, who

12   encumbers Debtor's inventory.  Community Bank has agreed to an extension of the loan and a

13   lower interest rate. This will allow Debtor more time to keep its current inventory with sufficient

14   time to reorganize.

15        Debtor has also successfully negotiated with Richemont regarding its disputed claim.

16   Richemont agreed to accept a second position lien on all inventory in return for judgment in favor

17   of Richemont in the amount of $772,897.84.

18        Debtor will continue operating at the store located at 2240 Village Walk Drive, Unite 130,

19   Henderson, NV 89052. The closure of the second store and return of inventory from the Lake

20   Las Vegas store has allowed Debtor to streamline its operations, cutting down excess expenses

21   with the replenishment of inventory.  Debtor intends to continue streamlining by negotiating a

22   reduced rent with its current landlord.  Debtor also intends to generate more sales by increasing

23   in- store promotions and holding promotional events.  In the past, promotions generated higher

24   net sales, rather than simply advertising.

25        With the downturn in the economy, Debtor has been able to adapt to the needs of its

26

27

28

NANCY L. ALLF,
ATTORNEY AT
LAW

clients by shifting towards purchasing special orders only and by offering an onsite jeweler to make repairs and modifications. Debtor is researching into licenses needed to purchase gold as the economy has increased the price of gold and the market for purchasing gold jewelry for resale.

The Debtor will be under no further obligation to seek court approval for payment of professional fees after that time, or to file Monthly Operating Reports. However, as mentioned above, it will provide a report to the court upon each quarterly distribution to creditors during the life of the Plan, and will pay the U.S. Trustee's fees in compliance with the Bankruptcy Code and Local Rules.

**B.    Assumption and Rejection of Executory Contracts.**

Debtor has an executory contract with The District at GVR, LLC for office space located at 2240 Village Walk Drive, Unite 130, Henderson, NV   89052.   Debtor has accepted the contract.

Debtor has an executory contract with Signal Butte for office space located at 35 Via Brianza, Suite 100, Henderson, NV 89011. Debtor has rejected the contract and has vacated the premises.

### ARTICLE VII

#### REQUEST FOR FINDING OF FAIR AND EQUITABLE TREATMENT OF IMPAIRED CLASSES

Pursuant to Section 1129(b) of the Bankruptcy Code, the Debtor, as the proponent of this Chapter 11 Plan, hereby requests, that this Court find that the provisions of this Plan provide fair and equitable treatment to those Claimants who are impaired under the Plan and who elect not to accept the Plan, and that this Court confirm the Plan ("cramdown") notwithstanding the requirement of Section 1129(a)(8) of the Bankruptcy Code as to such Claimants.

NANCY L. ALLF,
ATTORNEY AT
LAW

**ARTICLE VIII**

**CONDITIONS PRECEDENT TO DISTRIBUTIONS UNDER THE PLAN**

      In addition to the other terms and conditions set forth herein, the following shall constitute conditions precedent to any Claimant's or Interest Holder's right to participate in the distributions under the Plan:

      As a condition to participation in distribution under the Plan, any Person against whom a turnover judgment has been entered in this case shall turn over to the Debtor the property, or the value thereof, ordered turned over by such judgment. No Person against whom a turnover judgment has been entered shall have any right to participate in distributions under the Plan until such Person turns over to the Reorganized Debtor the required amount, or the value thereof, and such Person shall forfeit any rights to distribution which the Plan contemplates and which would have occurred during the period of noncompliance with any turnover judgment. Any rights of any such Person to participate in distributions under the Plan shall terminate six months from the Confirmation Date in the event such Person has not by that time turned over to the Reorganized Debtor the required property or the value thereof. Notwithstanding the foregoing, nothing contained herein shall limit any right of the Reorganized Debtor to enforce any judgment of the court. Further, no person or entity sued by the Debtor for fraudulent conveyance or preference shall be entitled to receive a distribution until the case is finally resolved.

**ARTICLE IX**

**DISALLOWANCE OF CLAIMS/RETENTION OF PROPERTY**

      Notwithstanding anything to the contrary herein, no creditors' attorney's fees or other "professional" fees (as the term "professional" is defined in 11 U.S.C. § 327), default interest, late penalties or any similar charges claimed after the Petition Date shall be compensable by the Debtor, or out of property of the estate, nor shall the same constitute part of an Allowed Claim, until the Creditor seeking to recover such fees and charges from the Debtor, or the estate, has had such fees and charges approved by the Bankruptcy Court as "reasonable," or otherwise properly

NANCY L. ALLF,
ATTORNEY AT
LAW

1    payable by the Debtor or the estate.  Such approval must be made through a motion for the

2    recovery of same, made on no less than thirty (30) days' written notice to the Debtor, their

3    attorneys, and the Office of the United States Trustee.  Such motion must be made within 30 days

4    of the date of entry of the Confirmation Order; otherwise, any professional fees or default interest,

5    late penalties or similar charges claimed after the Petition Date claimed by a Creditor of the estate

6    shall be disallowed and recovery of such items shall be forever barred.

7        Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to

8    request the Court to disallow any Claim of any Person from which property is recoverable under

9    Section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer

10   avoidable under Section 544, 545, 547, 548, or 544 of the Bankruptcy Code unless such Person or

11   transferee has paid the amount, or turned over any such property for which such Person or

12   transferee is liable.

13       Except as otherwise specifically provided herein, the Reorganized Debtor shall retain all

14   property of the estate including any rights under avoidance actions, which shall become property

15   of the Reorganized Debtor.

16       Unless otherwise ordered by the Court, all claims objections shall be filed within thirty

17   days of the later of (i) the Confirmation Date; (ii) the Claims Bar Date; or (iii) as to claims which

18   are permitted to be filed after the Bar Date, the date upon such Claims are filed.  The Debtor shall

19   be permitted to rely upon the Claims Docket and the Schedules and Statements in determining the

20   claims to be paid.

21       Any payment(s) called for under the Plan which include (a) checks issued by the Debtor

22   which have been returned as undeliverable without a proper forwarding address, (b) checks issued

23   by the Debtor which were not mailed or delivered because of the absence of a proper address with

24   which to mail or deliver same); or (c) checks which are not negotiated within ninety days of

25   mailing shall be considered abandoned by the Creditor and shall be available for distribution to

26   others in accordance with the terms of this Plan.  In the event there are funds remaining at the

27

28

NANCY L. ALLF,
ATTORNEY AT
LAW

1    conclusion of the case in an amount less than $1,000, and the Debtor determines that it is

2    burdensome or impractical to distribute such funds in accordance with the terms of the Plan, such

3    funds may be treated as unclaimed property in accordance with Bankruptcy Code § 347.

4                                              **ARTICLE X**

5                                    **DESIGNATION OF DEBTOR**
                                **AS REPRESENTATIVE OF THE ESTATE**
6

7            Pursuant to Section 1123(b)(3)(B) of the Code, the Debtor, is hereby designated as the

8    representative of the estate.  The Debtor shall be authorized to take all actions necessary to

9    consummate and effectuate the Plan, without further order of this Court, including, but not limited

10   to, make distributions; pay ordinary and regular operating costs; execute sale and transfer

11   documents regarding assets; and compromise claims.

12                                             **ARTICLE XI**

13                                      **MODIFICATION OF PLAN**

14           The Debtor may propose amendments or modifications to this Plan at any time prior to

15   confirmation or at the confirmation hearing, without leave of the Court, upon proper notice.

16   Amendments may be oral if stated on the record.  After confirmation, the Debtor may, with the

17   approval of the Court, and so long as it does not materially or adversely affect the interest of

18   creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or the order

19   of confirmation, in such manner as may be necessary to carry out the purposes of this Plan.

20   Debtor anticipates that confirmation litigation may include challenges to the fairness of certain

21   terms of the treatment of Class 1, Class 1A, Class 2, Class 3, Class 4, Class 5, and Class 6

22   creditors; in the event the court finds that the proposed treatment of any of the class of creditors is

23   not fair and equitable or otherwise renders the plan unconfirmable, but that a modified treatment

24   would be fair and equitable or otherwise render the plan confirmable, Debtor may elect to modify

25   the Plan to incorporate such different terms as deemed appropriate by the Court.  In such event,

26   Debtor shall cause to be transmitted a notice of such proposed modifications, and creditors shall

27

28

NANCY L. ALLF,
ATTORNEY AT
LAW

1   be permitted to change their ballots within ten days of such notice. Ballot changes may be oral if

2   stated on the record. If necessary due to a change in ballots or otherwise, the Court shall hold a

3   hearing to consider the Plan in its amended form.

4                                        **ARTICLE XII**

5                                   **EXECUTORY CONTRACTS**

6          Debtor does not have any real property to sell. The only known executory contracts are

7   listed and described above in Article VII, Section B. Any executory contracts not listed above

8   shall be deemed rejected. Any claims for rejection damages shall be filed by the Effective Date.

9                                       **ARTICLE XIII**

10                                 **EFFECT OF CONFIRMATION**

11         Confirmation of the Plan shall have all of the effects provided in Section 1141 of the

12  Bankruptcy Code which are not inconsistent with the terms of the Plan, except that the property

13  of the estate shall revest in the Debtor.

14         From and after the Confirmation Date all loan documents, trust deeds and other contracts

15  documenting claims against the Debtor shall be deemed modified and/or superseded completely,

16  as the case may be, by the terms of the Plan. After the Confirmation Date, Claims shall be paid

17  only in accordance with the Plan, and any effort by any Claimant to compel the Debtor to pay

18  such Claimant more than its Allowed Claim, or to pay its Claim in any manner other than as

19  provided for in the Plan shall constitute a violation of the Confirmation Order and Section 1141

20  of the Bankruptcy Code.

21         All claimants holding negotiable instruments signed by the Debtor which reflect a pre-

22  petition claim, will be required to cause a legend or notation to be placed conspicuously on the

23  face of any such instrument stating that the terms of this instrument have been modified by the

24  terms of he Plan. Thus legend or notation must be placed on said negotiable instruments within

25  five (5) days of the Effective Date, and no payments shall be made to the holders of any such

26  instrument until they have proved that this action has in fact been taken.

27

28

NANCY L. ALLF,
ATTORNEY AT
LAW

1       Pursuant to Section 1142(a) of the Bankruptcy Code, notwithstanding any other applicable

2    non-bankruptcy law, rule or regulation relating to financial condition, the Debtor is authorized to

3    carry out the terms of the Plan.  Moreover, all claimants holding liens on the Debtor' properties,

4    will be directed, pursuant to Section 1142(b) of the Bankruptcy Code, to execute or deliver, or to

5    join in the execution or delivery, of any instrument or other document required to effect a transfer

6    of property dealt with by the Plan, and to perform any other act, including the satisfaction of any

7    lien that is necessary for the consummation of the Plan.  To the extent that any lien holder fails to

8    comply with this provision, the Debtor may seek an order from the Bankruptcy Court, on an

9    expedited basis, compelling compliance with this provision, and during the time period

10    encompassed by this compliance, no payments shall be made to the noncomplying Creditor under

11    the Plan, and any such Creditor shall be responsible for all costs and damages incurred by the

12    estate as a result of its noncompliance with this provision.

13                  **ARTICLE XIV**

14              **RETENTION OF JURISDICTION**

15       The Court shall retain jurisdiction of this Chapter 11 case until this Plan has been fully

16    consummated, pursuant to and for the purposes set forth in the Code, and specifically for the

17    purpose of:

18       14.1    Allowance or Classification of Claims, including the reexamination of Claims

19    which have been allowed for the purposes of voting, and the determination of such objections as

20    may be filed to Creditors' Claims.  The failure by the Debtor to object to or examine any claim

21    for the purpose of voting shall not be deemed to be a waiver of the Debtor' right to object to or

22    reexamine the Claim in whole or in part.

23       14.2    The allowance of compensation or other administrative expenses.

24       14.3    To hear and determine Claims concerning state, local, and federal taxes pursuant

25    to Sections 346, 505, 525, and 1146 of the Bankruptcy Code.

26

27

28

NANCY L. ALLF,
ATTORNEY AT
LAW

14.4    To hear and determine any action or proceeding brought by Debtor under Sections 510, 543, 544, 545, 548, 549, 550, 551, and 553 of the Bankruptcy Code, whether such action or proceeding is brought before or after the Effective Date, to include the Adversary Proceedings identified in Schedule B, and any removed litigation.

14.5    To hear and determine all actions and proceedings which relate to pre-confirmation matters brought by the Debtor whether such action or proceeding is brought before or after the Effective Date.

14.6    The determination of any issues relating to the assumption or rejection of executory contracts and unexpired leases including the assumption or rejection of executory contracts or unexpired leases not expressly dealt with herein.

14.7    The correction of any defects, the curing of any omission, or the reconciliation of any inconsistency of this Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

14.8    The modification of this Plan after Confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

14.9    The enforcement and interpretation of the terms of this Plan.

14.10    The entry of any order, including injunctions, necessary to enforce title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary including, without limitation, any right of the Debtor to recover assets pursuant to any of the relevant provisions of the Bankruptcy Code.

14.11    The determination of the validity, extent and priority of all liens and security interests against property of the Debtor's Chapter 11 estate.

14.12    To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary or desirable to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in this proceeding.

14.13    The entry of an order concluding and terminating this Chapter 11 case.

NANCY L. ALLF,
ATTORNEY AT
LAW

### ARTICLE XV

### TREATMENT OF DISPUTED CLAIMS

15.1   The Debtor shall retain amounts necessary for payments applicable to Dispute Claims (reserving sufficient funds to pay amounts which would be payable on such claims as if they were allowed in full).

15.2   Upon Final Order of the Bankruptcy Court respect to the allowance or disallowance of a Disputed Claim:

a.   If any part of the Disputed Claim is finally allowed, the Debtor shall distribute to such Claimant the amount to which the Claimant would have been entitled if the Claim had been allowed as of the Confirmation Date, within thirty days of the date of the Final Order allowing such Claim,

b.   If all or any part of the Disputed Claim is disallowed, the funds previously reserved shall be available to distribution to others in accordance with the terms of this Plan.

### ARTICLE XVI

### POST-PETITION REPORTING

16.1   The Debtor shall file post-petition reports as required by L.R. 3020(a), or as thereafter amended, with each, report to include the time period ending on the last day of the calendar month at least thirty (30) days prior to the due date of such report, and after the quarterly distributions called for in the Plan.

The Debtor may request entry of a Final Decree upon (1) determination of amounts to be paid pursuant to the Confirmed Plan; and (2) entry of a Final Order of Confirmation.

Dated: December 3, 2009                NANCY L. ALLF, ATTORNEY AT LAW


By: _Nancy Allf_____
     **Nancy L. Allf, Bar No. 0128**
     **nancy_allf@gshllp.com**
     **415 S. Sixth Street, Ste. 200F**
     **Las Vegas, NV 89101**
     Attorneys for Debtor

NANCY L. ALLF,
ATTORNEY AT
LAW